**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action no. 11-cv-00703-CMA-MEH

CARNATION BUILDING SERVICES, INC.,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
DEPARTMENT OF AVIATION,
KIM DAY,
RUTH RODRIGUEZ,
APRIL HENDERSON, in all capacities, and
SERVICE EMPLOYEES INTENTIONAL UNION LOCAL 105,

      Defendants.

_____

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
_____

      This matter is before the Court on Defendants City and County of Denver,

Department of Aviation, Kim Day, and Ruth Rodriguez's (collectively,

"Defendants") Joint Motion to Dismiss.[1]  (Doc. # 38.)  In this case, Plaintiff

Carnation Building Services, Inc., brings various claims asserting that

Defendants, under pressure from labor union representatives, breached a

contractual agreement with Plaintiff.  Jurisdiction is proper pursuant to 28 U.S.C.

§ 1331 and § 1367.

_____

[1] Defendant Service Employees International Union Local 105 ("SEIU") and Defendant
April Henderson are also named defendants in this action, but are not party to this
motion.

1

# I. BACKGROUND

## A.    FACTS[2]

Plaintiff is a Colorado corporation that provides building services to owners and/or managers of buildings.  (Doc. # 2 at ¶¶ 1-2.)  In February 2008, Defendants solicited bids for window cleaning services at Denver International Airport ("DIA").[3]  (*Id.* at ¶ 14.)  Plaintiff submitted a bid for the window cleaning project and, on or about April 21, 2008, Defendants notified Plaintiff that it was the successful bidder.  (*Id.* at ¶¶ 15, 16.)  This notice came in the form of a "Notice To Apparent Successful Bidder" (the "Notice"), which allegedly stated that Plaintiff's bid was "fair, equitable and in the best interest of the City and County of Denver, Colorado; [as a result, the bid] is hereby declared to be acceptable at the bid price contained therein."  (*Id.* at ¶ 22.)

Upon receiving the Notice, Plaintiff alleges that it began preparing for the window cleaning project by obtaining a $250,000 performance bond and a general liability policy.  (*Id.* at ¶ 24.)  On April 28, 2008, Plaintiff attended a meeting at DIA, discussed the start date of June 15, 2008, and was informed that it needed different liability certificates and an additional copy of its performance bond.  (*Id.* at ¶ 27.)  Two days later, Plaintiff delivered the bonds and certificates

---

[2] The facts are taken from Plaintiff's Amended Complaint (Doc. # 2), unless otherwise noted.

[3] For most of the factual allegations, Plaintiff fails to distinguish between the various defendants, merely referring to Defendants cumulatively.  This makes it "impossible for any of [the defendants] to ascertain what particular . . . acts they are alleged to have committed." *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011).

to Ms. Irene Tenebaum, presumably an employee at DIA.[4]  (Id. at ¶ 29.)  Plaintiff

also ordered two F250 Crew Cabs that were "specifically ordered and designed"

for the window cleaning project.  (Id. at ¶ 31.)

On or about April 30, 2008, Plaintiff signed a "Contract for Window

Cleaning Services" (the "Contract") at DIA.  (Id. at ¶ 30.)  The Contract was never

signed by Defendant City and County of Denver.[5]  (Doc. # 38-3 at 4.)  Sometime

thereafter, Plaintiff received a letter from Defendants, dated May 15, 2008, which

allegedly rescinded the Contract.  (Doc. # 2 at ¶ 42.)  Plaintiff also allegedly

received its bid documents, along with a letter dated March 28, 2008, stating that

Plaintiff's Bidder's Proposal was cancelled.  (Id. at ¶ 43.)  Plaintiff alleges that "no

Contract has ever been cancelled after the issuance of a Notice to Apparent

Successful Bidder and/or at this stage in the process."  (Id. at ¶ 45.)  The bidding

process for window cleaning services was re-opened, and the DIA bid was

subsequently awarded to B-G, a Danish company.  (Id. at ¶ 48.)

## B. PROCEDURAL HISTORY

Plaintiff originally filed suit in Colorado state court.  Defendant SEIU

moved to dismiss Plaintiff's initial complaint on the grounds that the state law

---

[4] Plaintiff does not identify who Ms. Tenenbaum is or what her job entails.

[5] Normally, a "12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court and all parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'"  GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)(6) (further internal modifications omitted)). Notwithstanding this general rule, if "the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  Id.  Thus, the Court may consider the contract without converting the motion to dismiss to a motion for summary judgment.

claims asserted against it were preempted by federal law.  On March 9, 2011, the

state district court denied the motion, concluding that Plaintiff's claims were not

preempted because Plaintiff had pleaded "sufficient facts to show a violation of

29 U.S.C. § 158(b)(4)."  (Doc. # 4 at 3.)  Defendant SEIU subsequently removed

the action on federal question grounds.  (Doc. # 1.)

Plaintiff sought remand, arguing that Defendant SEIU's removal was

untimely under the thirty-day deadline for removal mandated by 28 U.S.C. §

1446(b).  (Doc. # 13.)  This Court denied Plaintiff's motion to remand because

"Defendant [SEIU] did not possess clear and unequivocal notice that the action

was removable prior to the [expiration of the thirty-day deadline]."[6]  (Doc. # 30 at

6.)  At the time this case was removed by Defendant SEIU, the instant motion to

dismiss was fully ripe for review.

In their Joint Motion to Dismiss, Defendants contend that all of Plaintiff's

claims are barred by the Colorado Governmental Immunity Act ("CGIA"), Colo.

Rev. Stat. §§ 24-10-101 through 120.  (Doc. # 38 at 3.)  Plaintiff responded on

March 23, 2011, and Defendants replied on June 28, 2011.  (Doc. ## 39, 40.)

## II.  STANDARDS OF REVIEW

### A.    MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is

appropriate when the Court lacks subject matter jurisdiction over the claims

---

[6] This Court's Order denying Plaintiff's motion to remand is available at *Carnation Bldg. Servs. v. City & Cnty. of Denver*, No. 11-cv-00703, 2011 WL 1596131 (D. Colo. Apr. 26, 2011) (unpublished).

asserted in the complaint.  "The burden of establishing subject matter jurisdiction

is on the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*,

518 F.3d 1186, 1189 (10th Cir. 2008).  Rule 12(b)(1) challenges are generally

presented in one of two forms: "The moving party may (1) facially attack the

complaint's allegations as to the existence of subject matter jurisdiction, or (2) go

beyond allegations contained in the complaint by presenting evidence to

challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill*

*Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004)

(quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

**B.      MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move

to dismiss a claim for relief in any pleading for "failure to state a claim upon which

relief can be granted."  A claim will survive a Rule 12(b)(6) motion to dismiss only

if the complaint "contains 'enough facts to state a claim to relief that is plausible

on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "The

plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,*

556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citation and internal quotation marks

omitted); *see also Robbins,* 519 F.3d at 1247 ("The allegations must be enough

that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a

claim for relief.").

In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Young v. Davis,* 554 F.3d 1254, 1256 (10th Cir. 2009) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Also, "a complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557).  Furthermore, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation and internal quotation marks omitted).

### III. <u>ANALYSIS</u>

Absent exceptions not relevant here, the CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant."   Colo. Rev. Stat. § 24-10-106(1).  The CGIA does not bar actions that are grounded in contract or in promissory estoppel.  *See Adams ex rel. Adams v. City of Westminster*, 140 P.3d 8, 10 (Colo. App. 2005).  The Colorado Supreme Court has "made clear [that] the form of the complaint is not

determinative of the claim's basis in tort or contract." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008) (citing *Berg v. State Bd. Of Agric.*, 919 P.2d 254, 258 (Colo. 1996)). Instead, courts "must consider the nature of the injury and the relief sought." *Id.* This is to be done on a case-by-case basis "through a close examination of the pleadings and undisputed evidence." *Id.*

"While the notion of a 'tort' is notoriously difficult to define with any degree of precision . . . there can be little doubt that the legislature used this language in reference to the breach of a general duty of care, as distinguished from the breach of a contract or other agreement." *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo. 2008). In other words, "[w]hen the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA. *Robinson*, 179 P.3d at 1003.

When a claim against a public entity is barred by the CGIA because it lies in tort or could lie in tort, a court must dismiss the claim for lack of subject matter jurisdiction. *See Gallagher v. Bd. of Trs.*, 54 P.3d 386, 394 (Colo. 2002) ("sovereign immunity is a jurisdictional question, an absolute bar to suit, and prevents the court from maintaining subject matter jurisdiction over the suit."). In contrast, a public employee enjoys only qualified immunity for claims under the CGIA, and such "immunity is only a defense to liability and does not bar suit entirely." *Id.* Thus, a trial court may not dismiss a claim against a public

7

employee for lack of subject matter jurisdiction "as it may with a question of sovereign immunity."  *Id.*  In order to bring a claim against a public employee, however, the CGIA requires a plaintiff to plead with a specific factual basis that the conduct of the defendant public employee was "willful and wanton."  Colo. Rev. Stat. § 24-10-110(5)(a).  Failure to do so, "result[s] in dismissal of the claim for failure to state a claim upon which relief can be granted."  *Id.* § 24-10-110(5)(b).

Plaintiff's Amended Complaint brings nine claims against various defendants.  (*See* Doc. # 2.)  Defendants argue that Plaintiff's claims are barred by the CGIA because all nine causes of action lie in tort or could lie in tort.[7]  (Doc. # 38 at 3-5.)  In response, Plaintiff contends that its claims are grounded in contract, and not barred by the CGIA.  (Doc. # 39 at 2.)  The claims, in the order they will be addressed, are as follows.  Against only Defendant City and County of Denver ("Defendant City and County"), Plaintiff asserts the following claims: (1) breach of contract; (2) breach of good faith and fair dealing; (3) breach of contract implied in law, quasi contract; and (4) interference with freedom of association.  (Doc. # 2 at ¶¶ 53-58, 68-72, 85-93.)  Against all Defendants, Plaintiff brings claims for (1) promissory estoppel and (2) civil conspiracy.  (*Id.* at ¶¶ 64-67, 80-84.)  Against Defendants Department of Aviation, Kim Day, and Ruth Rodriguez, Plaintiff asserts the following claims: (1) negligent interference with contractual relationship and (2) intentional interference with prospective

---

[7] Defendants also contend that Plaintiff lacks standing to bring its freedom of association claim against Defendant City and County.

economic advantage.  (*Id.* at ¶¶ 73-79.)  Finally, against Kim Day and Ruth Rodriguez only (the "Individual Defendants"), Plaintiff brings a claim for misrepresentation.  (*Id.* at ¶¶ 59-63.)

1.  <u>Claims Against Defendant City and County</u>

a)  *Breach of Contract Claim; Breach of Good Faith and Fair Dealing*

The Court first addresses Plaintiff's first and fifth causes of action: breach of contract and breach of good faith and fair dealings.  (Doc. # 2 at ¶¶ 53-55, 68-72.)  A breach of contract claim is actionable only where the parties actually have a contract.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing "the existence of a contract" as the first element in a breach of contract claim).  Similarly, a breach of good faith and fair dealing is premised on the existence of a valid contract.  *See Decker v. Browning-Ferris Indus.*, 931 P.2d 436, 443 (Colo. 1997) ("A breach of [good faith and fair dealing] therefore constitutes a breach of an obligation created by the contract . . . rather than a breach of an obligation arising independently from the contract.").

The issue, then, is whether a valid contract existed between Plaintiff and Defendant City and County.  Defendants contend that the Contract was void because it was never signed by the Mayor, nor was it approved by the Denver City Council, as required by the Charter of the City and County of Denver (the "Charter").  (Doc. # 38 at 7.)  In relevant part, the Charter provides that "[a]ll contracts . . ., requiring the assent of the City and County, shall be subscribed by the Mayor . . . under the seal of the City and County, and attested by the Clerk."

9

Denver, Colo., Rev. Mun. Code. art. II § 2.2.4 (2011).  The Charter further provides that the City Council must approve, acting by ordinance or resolution, any contract which "will require or result in the payment or receipt by the City" of $500,000 or more.[8]  *Id.* at art. III § 3.2.6.  In is undisputed that the Contract was never presented to the Mayor for his signature, nor was it approved by the Denver City Council; thus, the Contract was void.  See *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 519 (Colo. App. 1998) ("[c]ontracts executed by municipal corporations are void when there is a failure to comply with the mandatory provisions of the applicable statutes or charters.").

Because no valid contract existed, Plaintiff's breach of contract claim and breach of good faith and fair dealing claim must be dismissed for failure to state claim upon which relief may be granted.  *See Cherry Creek Aviation*, 958 P.2d at 520 (dismissing breach of contract claim where contract was not ratified by the city); *Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. App. 1998) (holding that without an express contractual agreement, defendant should have received a directed verdict on plaintiff's good faith and fair dealing claim).  Moreover, because Plaintiff concedes that the Contract was never signed by the Mayor or presented to the City Council for approval, amendment of these claims would be futile and both are dismissed with prejudice.

---

[8] Plaintiff's Amended Complaint does not state the value of the contract.  However, in their Joint Motion to Dismiss, Defendants assert that the "Maximum Contract Liability" of the contract was $8,456,000.  (Doc. # 38-3 at 7 n.1.)  Plaintiff does not dispute this amount in its Response, and acknowledges that the Contract was never presented to the City Council.  (Doc. # 39 at 4.)

b)      *Contract Implied in Law, Quasi-Contract*

The Court next turns to Plaintiff's second cause of action, a claim for "contract implied in law, quasi contract" brought against Defendant City and County. (Doc. # 2 at ¶¶ 56-58.) Plaintiff alleges that "it would be inequitable for [Defendant City and County] to breach the agreement." (Doc. # 2 at ¶ 57.) Additionally, Plaintiff seeks recovery for the "loss of profits, loss of opportunities, [and] loss of funds spent to prepare for the start of work." (*Id.* at ¶ 58.) These allegations suggest that Plaintiff does not comprehend the nature of its claim. A claim for contract implied in law or quasi contract is based on the doctrine of unjust enrichment, "an equitable principle which allows courts to avoid the unjust enrichment of one party at the expense of another by creating bargains where the parties have not intended to do so." *Bachrach v. Salzman*, 981 P.2d 219, 222 (Colo. App. 1999); *see also DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998) ("When restitution is the primary basis of a claim, as opposed to a remedy or bargains gone awry, it invokes what has been called a contract implied in law.") (internal quotations omitted). The elements to bring such a claim are:

> (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value.

*DCB Constr.*, 965 P.2d at 119 (quoting *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096 (Colo. 1982)).

Plaintiff's Amended Complaint does not support an implied contract in law or quasi-contract claim because there are no allegations that Plaintiff conferred any benefit upon Defendants.  In fact, based on Plaintiff's allegations, Plaintiff never provided any services to Defendants because Defendants terminated the agreement before Plaintiff commenced work.  Thus, the Court dismisses Plaintiff's second cause of action with prejudice because Plaintiff's allegations demonstrate that Plaintiff never conferred any benefit on Defendants.[9]

    *c)*    *Freedom of Association*

Next, the Court addresses Plaintiff's ninth cause of action, that Defendant City and County violated its constitutional freedom of association by authorizing Defendant SEIU to "circulate in a public meeting and solicit membership."  (Doc. # 2 at ¶ 86.)  Although the causal connection is not apparent to this Court, Plaintiff alleges that its decision not to associate with Defendant SEIU at the public meeting ultimately led to Defendant City and County awarding the contract "to a foreign unionized company with a higher cost of doing business." (*Id.* at ¶ 92.)  Defendants contend that this claim lies in tort and is barred by the CGIA.  Defendants also argue that Plaintiff lacks standing to bring this claim because Plaintiff has suffered no legally cognizable injury.   In its Response, Plaintiff did not address Defendants' arguments.  The Court agrees with

---

[9] Defendants argue that Plaintiff's claim is barred by the CGIA.  However, as Plaintiff has not actually alleged a quasi-contract or contract implied in law claim, the Court declines to engage in the hypothetical inquiry of whether this claim would also be barred by the CGIA.  *See Robinson*, 179 P.3d at 1007 (noting that an unjust enrichment claim may be predicated in either tort or contract, and instructing that determining whether such a claim lies in tort or contract is made on a case-by-case basis).

Defendants that Plaintiff lacks standing to bring this claim.  Alternatively, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

Standing is a threshold issue in every case before a federal court.  *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 892 (10th Cir. 2011).  To establish standing, a plaintiff must establish three elements: "injury in fact, traceability, and redressability."  *Id.*  The injury in fact prong requires a plaintiff to demonstrate that it suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Hydro Res., Inc. v. EPA*, 608 F.3d 1131, 1144 (10th Cir. 2010) (en banc).

Although it is not entirely clear from the Amended Complaint, Plaintiff's claimed injury appears to be that Defendant City and County awarded the contract "to a foreign unionized company with a higher cost of doing business." (Doc. # 2 at ¶ 92.)  Assuming that this is the asserted injury, the Court finds that Plaintiff lacks standing to bring this claim.

The Denver Municipal Code provides that "[a]ll bids or proposals may be rejected."  Denver, Colo., Rev. Mun. Code § 20-62.  The purpose of such a statue "is to protect property holders and taxpayers."  *Intermountain Systems v. Gore Valley*, 654 P.2d 872, 873 (Colo. App. 1982); *see also Ewy v. Sturtevant*, 962 P.2d 991, 995 (Colo. App. 1998) (stating that the "public bidding process . . . is for the protection of the public not the bidders.").  Thus, the Denver Municipal

Code "create[s] a cause of action to challenge the propriety of an award **only in taxpayers and property owners within the geographic limits of the contracting governmental body and not in the unsuccessful bidder**."[10] *Intermountain Systems*, 654 P.2d at 873 (emphasis added).   To the extent that Plaintiff's freedom of association claim challenges the award of the Contract to another bidder, this claim should be dismissed without prejudice for lack of standing.  *See Ewy*, 962 P.2d at 995 ("[B]idders, as bidders, have no standing to challenge the propriety of an award of a public contract to another bidder.").

Because it is not clear whether the only claimed injury is the award of the contract to another bidder, the Court alternatively finds that this claim should be dismissed for failure to state a claim upon which relief may be granted.

The Supreme Court has recognized two types of associational rights: freedom of expressive association and freedom of intimate association.   *See Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993).  Although Plaintiff does not specify which type of associational right it believes was violated, Plaintiff's allegation that representatives of Defendant SEIU were allowed to attend a public meeting and solicit membership does not implicate either of the associational rights.

The right of expressive association is anchored in the First Amendment and protects the right to associate for the purpose of engaging in activities protected by the First Amendment.  *See Roberts v. United States Jaycees*, 468

---

[10] Plaintiff has not asserted any claims as a "taxpayer or property owner" within the geographic limits of the City and County of Denver.

U.S. 609, 622 (1984).  A plaintiff may support a claim for violation of the freedom of expressive association by showing "some form of government action to impose penalties for the expression" of protected activity.  *Vigil v. S. Valley Acad.*, 247 F. App'x 982, 988 (10th Cir. 2007) (unpublished).  In this case, Plaintiff complains that Defendant City and County authorized Defendant SEIU to circulate in a public meeting.  Plaintiff has not alleged that it engaged in any form of expressive activity or that Defendant City and County imposed any sort of sanctions for any such activity.  Thus, Plaintiff has not stated a claim based on the right of expressive association.

To assert a violation of intimate associational rights, a "plaintiff must allege and prove that a defendant intended to "interfere with a particular relationship protected by the freedom of association . . . ."  *Trujillo v. Bd. of Ctny. Cm'rs of Santa Fe Ctny.*, 768 F.2d 1186, 1190 (10th Cir. 1985).  It is unclear what relationship, if any, Defendant City and County is alleged to have interfered with.  Relationships protected by the freedom of association are "highly personal," such as those that concern the creation and sustenance of a family, the raising and education of children, or cohabitation with one's relatives.  *See Roberts*, 468 U.S. at 618-19.  In this case, Defendant City and County did not interfere with any of Plaintiff's intimate relationships, and Plaintiff has therefore failed to state a claim for a violation of its intimate associational rights.

2.    <u>Claims Against Defendants</u>

*a) Promissory Estoppel*

15

Plaintiff's fourth claim, promissory estoppel, is brought against all Defendants.  (Doc. # 2 at ¶¶ 64-67.)  The CGIA does not provide governmental immunity for promissory estoppel claims because such claims are based in contract.  *See Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996); *Adams*, 140 P.3d at 10.  However, Defendants contend that Plaintiff's claim is actually a claim for equitable estoppel, which lies in tort.  *See DeLozier*, 917 P.2d at 716 ("a claim of equitable estoppel lies in tort, whereas a claim of promissory estoppel lies in contract.").

The determination of "whether a particular claim of promissory estoppel is actually a[n equitable estoppel claim] for purposes of the CGIA [is] made on a case-by-case basis."  *Berg*, 919 P.2d at 259.  The elements of a promissory estoppel claim are:

> (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.

*Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003).

Promissory estoppel is premised on a fundamental principle of contract law, "that one who makes promises must be required to keep them."  *Delozier*, 917 P.2d at 716.  The purpose of this doctrine is to provide a remedy "to those who rely to their detriment upon promises which the promisor should have reasonably expected to induce such reliance."  *Id.* (citation omitted)  Without this

16

doctrine, such promises "would not be enforceable, generally due to lack of consideration or a failure of the parties to reach a mutual agreement." *Id.*

In contrast, the doctrine of equitable estoppel "is applicable to misstatements of fact." *Id.* (citing *Comm. for Better Health Care v. Meyer*, 830 P.2d 884, 891 (Colo. 1992)).  Specifically, to allege a claim of equitable estoppel:

> the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury.

*Id.*  In short, the doctrine of promissory estoppel applies to promises whereas the doctrine of equitable estoppel applies to misstatements of fact.

Plaintiff alleges that Defendants "made certain unambiguous promises and representations to the Plaintiff, including . . . the promise that Plaintiff would commence work on or about June 15, 2008, and to prepare accordingly."  (Doc. # 2 at ¶ 65.)  Plaintiff further alleges that it relied on these promises to its detriment.  (*Id.* at ¶ 66.)

The Court agrees with Plaintiff that this claim is not barred by the CGIA. The Colorado Supreme Court has instructed that a misrepresentation in an equitable estoppel claim "must be of material fact that presently exists or has existed in the past." *Delozier*, 917 P.2d at 716 (citing *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, 892 P.2d 230, 237 (Colo. 1995)).  Therefore, "[a] promise relating to future events without a present intent not to fulfill the promise is not actionable as a tortious misrepresentation of facts." *Id.*  Here,

Plaintiff alleges that Defendants promised that Plaintiff "would commence work" in the future.  There is no allegation that, at the time this promise was allegedly made, Defendants did not intend to fulfill this promise.  Thus, this promise related to future events and is a distinctly contractual claim.  *See id.* at 717 (holding that plaintiff brought a promissory claim based on allegation that employer promised to hire him in the future).[11]

Although the Court finds that Plaintiff's claim is not barred by the CGIA, the Court will nonetheless dismiss this claim without prejudice because Plaintiff has failed to state a claim upon which relief may be granted.  The first flaw in Plaintiff's Amended Complaint is that it fails to identify any specific promises made by any defendant.  Plaintiff merely alleges that "Defendants made certain unambiguous promises and representations to Plaintiff."  This does not satisfy the pleading standard articulated in *Twombly* and *Iqbal* because the conclusory allegation that promises were made is simply a "legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  Plaintiff's Amended Complaint gives no hint as to what specific promises were made, when such promises were made, or which particular defendant made such promises.  The Notice, at least as quoted by Plaintiff in the Amended Complaint, contains no promises as

---

[11] The Court's conclusion that this is a promissory estoppel claim is further supported by the nature of the relief sought by Plaintiff.  Plaintiff seeks damages sustained as a result of its reliance on Defendants' alleged promises.   (Doc. # 2 at ¶ 67.)  Presumably, this refers to expenditures such as obtaining the work performance bond and the general liability policy that Plaintiff undertook after receiving the Notice.  *See Zick v. Krob*, 872 P.2d 1290, 1295 (Colo. App. 1993) (holding that the proper remedy in a promissory estoppel action is "damages awarded in a sufficient amount to compensate for the actual loss sustained").

to when Plaintiff would commence work or what they were required to do in preparation for commencing work.  (Doc. # 2 at ¶ 22.)  Further, Plaintiff has also failed to plead any specific facts showing that they reasonably relied on any such promises.  *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) ("[r]easonable reliance is generally conduct or action that would be reasonable for a prudent person to do or take under the circumstances.").

Although framed in the context of the CGIA, Defendants argue that Plaintiff's reliance on any promises made could not be reasonable in light of the Contract.  The Contract, which was attached to Defendants' Motion to Dismiss, contained the following provision: "This Contract is expressly subject to, and shall not become effective or binding on the City, until it is approved by Denver's City Council and fully executed by all signatories of the City and County of Denver."  (Doc. # 38-3 at 3.)  The Court agrees that this express disclaimer would preclude a promissory estoppel claim based on any promises contained in the Contract itself.  However, the disclaimer would not necessarily bar recovery on a promissory estoppel claim predicated on any promises made outside of the Contract, such as in the Notice.  Although Plaintiff's promissory estoppel claim is deficient under the federal pleading standards, the Court finds that amendment of this claim would not be futile and the claim should be dismissed without prejudice for failure to state a claim.

b)  *Civil Conspiracy*

19

The Court turns to Plaintiff's eighth cause of action, which is a civil conspiracy claim against all Defendants. (Doc. # 2 at ¶¶ 80-84.)  Civil conspiracy is a tort claim.  *See Ingold v. AMICO/Bluffs, L.L.C.*, 159 P.3d 116, 122 (Colo. 2007) (listing civil conspiracy as a tort claim).  Because civil conspiracy lies in tort, the claim against the entity Defendants must also be dismissed for lack of subject matter jurisdiction.  For the reasons explained in the following section, this claim is dismissed for failure to state a claim upon which relief may be granted against Individual Defendants.[12]

3.   Claims Against Department of Aviation and Individual Defendants

The Court now addresses Plaintiff's third, sixth, and seventh causes of action: misrepresentation, negligent interference with a contractual relationship, and intentional interference with prospective advantage.  (Doc. # 2 at ¶¶ 59-63, 73-79.)  The first two of these claims are brought against both Defendant Department of Aviation and Individual Defendants.  The misrepresentation claim is brought against Individual Defendants only.

All three of these claims lie in tort.  *See Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 721 (Colo. App. 2002) (describing interference with contractual relations and intentional interference with prospective economic advantage as torts); *CAMAS Colo., Inc. v. Bd. of Ctny. Comm'rs*, 36 P.3d 135, 138 (Colo. App. 2001) (claim for interference with future contracts barred by the

---

[12] As previously mentioned, public employees enjoy qualified immunity, not sovereign immunity, under the CGIA.  Thus, dismissal for lack of subject jurisdiction is only appropriate for claims against public entities, *i.e.*, Defendant City and County and Defendant Department of Aviation.

CGIA); *Keller v. A.O. Smith Harvestore Prods.*, 819 P.2d 69, 72 (Colo. 1991) ("a claim for [misrepresentation is] based on principles of tort law, independent of any principle of contract law."). Thus, these claims against Defendant Department of Aviation are dismissed for lack of subject matter jurisdiction.

Although these claims lie in tort, Plaintiff argues that Individual Defendants are not immune from liability under the CGIA because their conduct was willful and wanton. *See* Colo. Rev. Stat. § 24-10-105(1) ("no public employee shall be liable for injures arising out of an act or omission during the performance of his or her duties . . . unless such act or omission was willful and wanton"). The qualified immunity for public employees under the CGIA "is lost if the employee's act was 'willful and wanton.'" *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006).

Plaintiff references the words "willful and wanton" for the first time in its response to the instant motion to dismiss. Colorado statute requires that any claim alleging that a public employee acted willfully and wantonly be specifically plead. Colo. Rev. Stat. §§ 24-10-110(5)(a) and (b) provide:

> (5)(a) In any action in which allegations are made that an act or omission of a public employee was willful and wanton, **the specific factual basis of such allegations shall be stated in the complaint**.

> (5)(b) Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton **shall result in dismissal of the claim** for failure to state a claim upon which relief can be granted.

Although "willful and wanton" is not defined by statute, Colorado courts have found that "the standard for determining willful and wanton conduct under

21

the CGIA" is closely related to the "standard for determining punitive damages." *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005).  Colorado statute defines willful and wanton conduct in the punitive damages context as "conduct purposely committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b).

The fact that Plaintiff's Amended Complaint did not contain the words "willful and wanton" is not a fatal defect.  *See Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) (finding that a plaintiff does not necessary need to allege "willful and wanton" conduct).  However, Plaintiff's Amended Complaint contains no allegations whatsoever that even hint of any willful and wanton conduct.  The CGIA requires more, that is, "the specific factual basis of such allegations [must] be stated in the complaint."  Colo. Rev. Stat. § 24-10-110(5)(a).  Plaintiff has not provided any specific facts supporting its contention that Individual Defendants acted willfully and wantonly.  In fact, the only specific factual allegation pled against either Kim Day or Ruth Rodriguez is that Kim Day met with Defendant SEIU on May 9, 2008.  (Doc. # 2 at ¶ 35.)  Beyond this, Plaintiff conclusorily alleges that Individual Defendants "made misrepresentations with the intent to induce and/or deceive Plaintiff," that Individual Defendants "pursued a plan to interfere with the Plaintiff's agreement[s]," and intentionally "interfered with Plaintiff' prospective economic advantage by wrongfully interfering with and/or terminating the contract."  (*Id.* at ¶¶ 60, 74, 78.)  These allegations merely restate

the elements of particular tort claims and do not demonstrate that Individual

Defendants' conduct rose to the level of willful and wanton.  Such conclusory

allegations are insufficient to meet the heightened pleading requirements

embodied in § 24-10-110(5)(a).  *See Wilson*, 126 P.3d at 282.

Accordingly, Plaintiff has failed to allege any wanton and willful conduct

on the part of Individual Defendants, and they enjoy qualified immunity under the

CGIA.  Therefore, the claims against Individual Defendants are dismissed

without prejudice for failure to state a claim.  Colo. Rev. Stat. § 24-10-110(5)(b).

### III.  <u>CONCLUSION</u>

Based on the foregoing, Defendants' Joint Motion to Dismiss (Doc. # 38)

is GRANTED.  Accordingly, IT IS ORDERED THAT:

1. Plaintiff's claims for breach of contract, "breach of implied contract,
   quasi contract," and breach of good faith and fair dealing (claims 1,
   2, and 5) against Defendant City and County are DISMISSED WITH
   PREJUDICE for failure to state a claim.

2. Plaintiff's claim for misrepresentation (Claim 3) against Individual
   Defendants, Plaintiff's claims for negligent interference with
   contractual relationship and intentional interference with prospective
   advantage (claims 6 and 7) against Individual Defendants and
   Department of Aviation, and Plaintiff's claim for civil conspiracy
   (Claim 8) against Defendants are barred by the CGIA and are
   DISMISSED WITHOUT PREJUDICE.  The claims against entity

Defendants are dismissed for lack of subject matter jurisdiction.  The claims against Individual Defendants are dismissed for failure to state a claim.

3. Plaintiff's claim for promissory estoppel (claim 4) against Defendants is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

4. Plaintiff's freedom of association claim (claim 9) against Defendants is DISMISSED WITHOUT PREJUDICE because Plaintiff lacks standing to bring this claim.

5. Defendants also request an award of attorneys' fees under Colo. Rev. Stat. § 13-17-201.  (Doc. # 40 at 10.)  However, the Colorado Supreme court has held that Colo. Rev. Stat. § 13-17-201 does not allow for an award of attorney fees for dismissal of claims that were plead in contract, even if a court dismisses them as barred by the CGIA.  *See Robinson*, 179 P.3d at 1010 (finding that § 13-17-201 was "not intended to hinder the filing of contract claims where the plaintiff could have alternatively pleaded claims in tort.").  Defendants have not filed a motion demonstrating their entitlement to attorneys' fees.  Thus, the Court denies this request WITHOUT PREJUDICE. Defendants have fourteen days from this Order to file a motion for attorney's fees that demonstrates that they are entitled to such fees

and that such fees are reasonable.

DATED: December 29, 2011.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge